UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL P. LARKIN,
    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social
Security Administration,
    Defendant.

No. 3:12-cv-35 (MPS)

**MEMORANDUM OF DECISION**

**I.   INTRODUCTION**

On January 6, 2012, the plaintiff, Daniel Patrick Larkin ("Mr. Larkin"), filed a complaint [doc. # 1] under 42 U.S.C. § 405(g) seeking review of a final decision by the defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security (the "Commissioner"), denying his application for Supplemental Security Income and Disability Insurance benefits.[1]  On April 29, 2013, Magistrate Judge William I. Garfinkel issued a Recommended Ruling [doc. # 21] recommending that the Court reverse the Commissioner's decision and remand the matter for rehearing.

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure and Local Rule 72.2(b), this Court must review de novo any sections of the Recommended Ruling to which any party properly objects.  The only objection in this case was made by the Commissioner and challenges the portion of the Recommended Ruling recommending remand to the administrative law judge (the "ALJ") to consider properly the effect of Mr. Larkin's back and knee pain in determining whether he was entitled to benefits.  (*See* Def.'s Objection to Rec. Ruling [doc. # 22].)  The

---

[1] The Complaint names as the defendant Michael Astrue, who was the Commissioner of Social Security at the time of the decision being challenged and at the time the Complaint was filed.  Ms. Colvin was automatically substituted as the defendant when she became acting Commissioner on February 14, 2013.  Fed. R. Civ. P. 25(d).

Commissioner does not challenge Magistrate Judge Garfinkel's conclusion that the ALJ erred in determining that Mr. Larkin's back and knee pain did not amount to a "severe impairment," but the Commissioner contends that remand is not warranted, and that this Court should affirm the ALJ's decision denying benefits, because any error on the severity point was harmless for two reasons.  First, the Commissioner asserts that the ALJ considered the impact of all of Mr. Larkin's impairments, including his knee and back pain, at a subsequent step in the disability determination and, more specifically, that his determination of Mr. Larkin's Residual Functional Capacity ("RFC") takes account of that impairment, regardless of whether it was "severe" or not. (*Id.* at 2.)  Second, the Commissioner argues that Mr. Larkin failed to show that his knee and back impairments produced limitations greater than those reflected in the ALJ's finding regarding his RFC.  (*Id.* at 3.)  Mr. Larkin has made no objection to the Recommended Ruling, which otherwise rejected every argument he raised in his Motion to Reverse the Commissioner's Decision.

Because I agree with the Commissioner that the ALJ's decision adequately reflects consideration of the impact of Mr. Larkin's knee and back pain on Mr. Larkin's RFC, and because I find that in any event a remand for further consideration would not lead to a different outcome, I REJECT the recommendation that the case be remanded, GRANT the Commissioner's Motion to Affirm [doc. # 19], and DENY Mr. Larkin's Motion to Reverse [doc. # 16].  I otherwise ADOPT the Recommended Ruling in its entirety.

II.     DISCUSSION

Familiarity with Magistrate Judge Garfinkel's Recommended Ruling is assumed, and I adopt and incorporate by reference the introduction, standard of review, background, and all other aspects of that Ruling except those that conflict with this decision.

As the Recommended Ruling recognizes, an ALJ's erroneous failure to find a disability claimant's impairment to be "severe" is harmless error where the ALJ "continued the sequential evaluation process and it was clear that he did not ignore [the impairments improperly found to be non-severe] in addressing subsequent issues in the sequential evaluation process." (Rec. Ruling [Doc. #21] at 15 (citing cases).) The Recommended Ruling concluded, however, that in this case, "[o]nce the ALJ determined that Mr. Larkin's back and knee was not a severe impairment, there is no indication that he ever considered it again in combination with Mr. Larkin's other impairments in assessing his RFC." (*Id.*) This sentence is the only place in the 21-page Recommended Ruling at which I part ways with Magistrate Judge Garfinkel's well-reasoned analysis. In my view, the ALJ's assessment of Mr. Larkin's RFC does contain sufficient evidence that he adequately considered Mr. Larkin's back and knee pain, together with the impairments that the ALJ found to be "severe," in determining the limitations on Mr. Larkin's capacity to work.

The RFC assessment – Step 4 of the ALJ's analysis – opens by stating the ALJ's finding that Mr. Larkin "has the residual functional capacity to perform sedentary work . . . except he requires a supervised, low stress environment requiring few decisions and can perform only occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, or balancing." (R. 28.) The ALJ then notes that, "[i]n making this finding, the undersigned has considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p." (R. 28 (emphasis added); *see also* R. 26 ("An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must

3

consider all of the claimant's impairments, including impairments that are not severe . . . ."").)[2] More specifically, the ALJ discusses a medical examination by Yacov Kogan, M.D., who the Commissioner describes as a "state agency consultative examiner." (Def.'s Objection to Rec. Ruling [doc. # 22] at 2.) The ALJ notes that Mr. Larkin reported to Dr. Kogan that "he has a history of alcoholism, hepatitis C, and chronic lumbar spine and bilateral knee pain." (R. 29.) The ALJ then describes the results of Dr. Kogan's examination: "Upon examination, Dr. Kogan

---

[2] 20 C.F.R. § 416.929(a) provides as follows:

> (a) General. In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 416.928 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (8) and 416.913(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work (or, if you are a child, your functioning). We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning). However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 416.927 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work (or if you are a child, your functioning).

reported that the claimant was 6'1" tall and weighed 246 pounds. *He had no tenderness and full range of motion of the lumbar spine* and no effusion, swelling, tenderness, heat, redness, thickening or limitation in range of motion of any of the joints of the upper or lower extremities." (R. 29 (emphasis added).)  The ALJ goes on to describe the remainder of the examination and then concludes, "I find that this examination indicates that the claimant is not as limited as he has alleged and is capable of a wide range of sedentary work activities." (R. 29-30.)

The language quoted above from the ALJ's RFC assessment makes plain that the ALJ considered, in determining Mr. Larkin's work capacity, a medical report specifically mentioning Mr. Larkin's report of knee and back pain and specifically concluding, after medical examination, that Mr. Larkin had "full range of motion of the lumbar spine." Thus, with respect to Mr. Larkin's back pain, the ALJ fulfilled his obligation to consider that impairment, together with his other impairments, in deciding Mr. Larkin's RFC.  There is also strong – albeit a bit less clear – evidence that he gave equal consideration to Mr. Larkin's knee condition.  The underlying report of Dr. Kogan that the ALJ was summarizing – and on which he relied heavily in his RFC assessment – gives Mr. Larkin's knees as clean a bill of health as it gives his lumbar spine, and it appears that the ALJ was adopting Dr. Kogan's findings about Mr. Larkin's knees by referring to Dr. Kogan's related conclusion that there was "no effusion, swelling, tenderness, heat, redness, thickening, or limitation in range of motion of any of *the joints of the upper or lower extremities*." (R. 29 (emphasis added).)  To be sure, "joints of the upper or lower extremities" is an imprecise phrase that can refer to the joints of the arms and legs or just the joints of the hands and feet,[3] and the imprecision ripens into ambiguity here because Mr. Larkin

---

[3] *See, e.g.*, Webster's Third New International Dictionary, Unabridged (including the following among the definitions of "extremity:" "a limb (as of the body) or other appendage: an arm or leg (circulation of blood in the extremities); usu: a hand or foot (coldness in the

5

has made independent complaints about neuropathy in his hands and feet. (R. 28.) The report itself discusses Dr. Kogan's findings about Mr. Larkin's knees and "the joints of the upper or lower extremities" together, and reaches essentially the same conclusions as to both:

> PHYSICAL EXAMINATION:
>
> . . .
>
> MUSCULOSKELETAL:
>
> Lumbar spine: no tenderness, full range of motion
> Bilateral knees: no tenderness, no swelling, no redness, no heat, full range of motion and good strength throughout range of motion
>
> No effusion, no swelling, no tenderness, no heat, no redness, no thickening, no limitation in range of motion of any of the joints of the upper or lower extremities.

(R. 575.) Whether Dr. Kogan meant his statement as to "upper or lower extremities" to encompass the knees as well as all other arm and leg joints or whether he intended that statement to refer only to the joints of the hands and feet, it is likely that the ALJ's adoption of that statement was intended to signal that he did not believe there was substantial evidence to support the notion that either Mr. Larkin's knees or any of the other joints in his arms and legs rendered him entirely disabled. Especially because the discussion of the examination of Mr. Larkin's knees in Dr. Kogan's report is adjacent to and reaches the same conclusion as the discussion of the examination of the joints of Mr. Larkin's upper and lower extremities, it is highly likely that the ALJ considered them together, and it would be picking nits with the ALJ's decision to say that his failure to include a more specific reference to the results of Dr. Kogan's examination of Mr. Larkin's knees in his RFC assessment requires a remand in this case. *See Dibble v. Fenimore*, 545 F.3d 208, 219 (2d Cir. 2008) ("Agencies need only articulate a rational

---

extremities"); American Heritage Dictionary, Second College Edition (including the following definitions: "6. A bodily limb or appendage. 7. A hand or a foot.")

connection between the facts found and the choice made, and a court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (internal quotation marks and citations omitted)).

Perhaps more importantly, the ALJ's RFC assessment already includes restrictions that would accommodate back and knee impairments, and there is no reason to believe that a remand to the ALJ to consider knee and back pain in more detail would result in any further restrictions, especially given the ALJ's decision to rely on Dr. Kogan's report.  As noted, the ALJ found that Mr. Larkin "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he requires a supervised, low stress environment requiring few decisions and can perform only occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, or balancing."[4]  (R. 28.)  While the Court cannot say with certainty that any of these restrictions

---

[4] 20 CFR § 416.967 sets forth a hierarchy of "physical exertion requirements," with "sedentary work" representing the least taxing tier of the hierarchy.  Specifically, the regulation provides as follows:

> To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:
>
> (a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the

were prompted by the ALJ's consideration of Mr. Larkin's knee and back pain,[5] the limitation to sedentary work and the limitations on the frequency of bending, stooping, squatting, kneeling and crawling certainly offer some accommodation to those impairments.  Further, it was within the broad discretion this Court must afford the agency – here, the ALJ – to choose to rely on the conclusions in Dr. Kogan's report as to the condition of Mr. Larkin's back and knees.  *See O'Connor v. Chater*, 1998 U.S. App. LEXIS 24514, at *4 (2d Cir. Sept. 25, 1998) ("It was well within the ALJ's discretion to credit the opinions of the consulting physicians over those of the treating chirooopractors."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  As noted, Dr. Kogan – who the ALJ found to be "an impartial medical examiner," (R. 29), – found that Mr. Larkin had "full range of motion" in his lumbar spine and "full range of motion and good strength throughout range of motion" in both knees.  (R. 575.)  Under these circumstances, Mr. Larkin

---

ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

(d) Heavy work.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(e) Very heavy work.  Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light, and sedentary work."

[5] As noted, Mr. Larkin has other impairments, including neuropathy of the hands and feet.

8

cannot show that a remand to the Commissioner for the purpose of detailing further his consideration of Mr. Larkin's knee and back condition in his RFC assessment would result in a different outcome, i.e., an RFC assessment with greater restrictions. Any failure by the ALJ to discuss Mr. Larkin's knee and back condition in more detail in his RFC assessment is, therefore, harmless error. *See Jaghamin v. Comm'r of Soc. Sec.*, No. 1:11-cv-1273(GLS), 2013 U.S. Dist. LEXIS 43965, at *20-21 (N.D.N.Y. Mar. 28, 2013) (because it was evident that a disability opinion not discussed in the ALJ's decision would not have changed the outcome, the ALJ's failure to discuss the opinion constituted harmless error); *Walzer v. Chater*, No. 93 Civ. 6240(LAK), 1995 U.S. Dist. LEXIS 21968, at *3 (S.D.N.Y. Sept. 27, 1995) (although it "would have been desirable for the ALJ to discuss" an omitted medical report in his decision, his failure to do so was harmless error because the report did not undermine his conclusion).

## III.  CONCLUSION

For the foregoing reasons, I REJECT the recommendation that the case be remanded, GRANT the Commissioner's Motion to Affirm [doc. # 19], and DENY Mr. Larkin's Motion to Reverse [doc. # 16]. I otherwise ADOPT the Recommended Ruling in its entirety. The Clerk is directed to close this case.

IT IS SO ORDERED.

                                                                         /s/
                                          Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            August 29th, 2013